**RECEIVED**

FEB 2 6 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JODY MECHE, ET AL | CIVIL ACTION NO. 05-0385 |
| VERSUS | JUDGE DOHERTY |
| GLENN RICHARD | MAGISTRATE JUDGE METHVIN |

## <u>MEMORANDUM RULING ON MOTION TO DISMISS</u>

Before this Court is a Motion to Dismiss [Doc. 85] filed by the defendant, who requests this

Court to dismiss the matter for lack of admiralty jurisdiction arguing: (1) the tort must have occurred

on or over navigable waters, which do not include Lake Rycade; and (2) the activities giving rise to

plaintiffs' claims lack a sufficient nexus to traditional maritime activity such that the incident has

no potentially disruptive influence on maritime commerce.  This Court previously heard oral

arguments and received evidence with respect to the first inquiry, and found the Lake Rycade waters

where the tort occurred is navigable in fact, and the reasons for so concluding are incorporated

herein.[1]

Accordingly, the remaining inquiry before this Court in considering defendant's Motion to

Dismiss is whether the activities giving rise to plaintiffs' claims are sufficiently connected to

---

[1] Because evidence has been submitted by the parties for the Court's consideration in addition to the pleadings, this Court deems defendant's Motion to Dismiss as a Motion for Summary Judgment. Upon consideration of the pleadings, submissions and other evidence submitted by the parties in this matter, the Court finds defendant has not established he is entitled to judgment in his favor as a matter of law, because this Court finds a sufficient threshold to invoke admiralty jurisdiction, as discussed more thoroughly herein and on the record in prior rulings which have been supplemented with written reasons by this Court.

1

traditional maritime activity to invoke admiralty jurisdiction.[2] For the following reasons, defendant's Motion to Dismiss [Doc. 85] is DENIED.

## LAW

Historically, the Fifth Circuit has considered multiple specific factors to determine whether or not activity is sufficiently connected to maritime activity to invoke admiralty jurisdiction. For instance, in *Kelly v. Smith*, a matter involving very similar facts, the Fifth Circuit specifically considered the following four factors to determine whether or not rifle fire directed at deer hunters in a vessel on navigable waters was sufficiently related to traditional maritime activity to invoke admiralty jurisdiction: (1) the functions and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and the type of injury; and (4) traditional concepts of the role of admiralty law. 485 F.2d 520, 525 (5th Cir. 1973).

In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co. [Grubart]*, the United States Supreme Court declined an invitation by land-based victims and a land-based tortfeasor to follow the four specific factors set forth in *Kelly, supra*, to conclude pile-driving should not be sufficiently connected to traditional maritime activity to invoke admiralty jurisdiction. The Supreme Court instead set forth a two-part inquiry involving an "intermediate level of possible generality." The

---

[2] On August 9, 2005, this Court heard oral argument with respect to whether or not the activity giving rise to plaintiffs' allegations has a sufficient connection to traditional maritime activity to support admiralty jurisdiction. Pursuant to the holdings of *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) and *Kelly v. Smith*, 485 F.2d 520 (5th Cir. 1973), this Court concluded the activity was sufficiently connected to traditional maritime activity to support the invocation of admiralty jurisdiction. Nevertheless, in the Motion to Dismiss [Doc. 85], defendant again argues there is an insufficient connection between the activity in this matter and traditional maritime activity to invoke admiralty jurisdiction. Having had the opportunity to consider evidence submitted at the 2006 evidentiary hearing in addition to the evidence submitted previously by the parties, this Court again finds the activity in this matter is sufficiently connected with traditional maritime activity to support the invocation of admiralty jurisdiction.

Supreme Court noted that, if the two-part test is satisfied, "it is not apparent why the need for admiralty jurisdiction in aid of maritime commerce somehow becomes less acute merely because land-based parties are involved." The Court also noted relevant holdings and prior decisions "do not say that every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction no matter what, they do show that ordinarily that will be so." 513 U.S. 527, 538-539 (citing *Sisson v. Ruby*, 497 U.S. 358, 363; *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 (1982); *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 270-271 (1972)).[3]

Under the two-part general inquiry in *Grubart*, a court must first "assess the general features of the type of incident involved" to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." The inquiry focuses "not on the specific facts at hand" but on whether the "general features" of the incident are "likely to disrupt commercial activity." The inquiry also involves a consideration of "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." 513 U.S. at 538-540 , 543 (citing *Sisson, supra* at 362-367; *Foremost Ins. Co., supra* at 675; *Executive Jet, supra* at 270-271).

## DISCUSSION

In *Kelly, supra*, the Court first observed the party injured was the "pilot responsible for the

---

[3] Although it appears the use of the specific factors in *Kelly* may have been abrogated by *Grubart*, it is of interest that the Fifth Circuit continues to rely on *Kelly* to determine whether activity is sufficiently related to traditional maritime activity to invoke admiralty jurisdiction. See, e.g., *Green v. Vermilion Corp.*, 144 F.3d 332, 336 (5th Cir. 1998) *cert. denied, Vermilion Corp. v. Green*, 526 U.S. 1017 (1999). Likewise, other Circuits continue to consider the *Kelly* factors. *See, e.g., Bunge Corp. v. Freeport Marine Repair, Inc.*, 240 F.3d 919, at 925 n. 4, (11th Cir.2001) (The use of the four factors established in *Kelly* is permissive, not mandatory).

safe navigation of the waters" and the vehicle involved was a "boat," whose function was transportation across navigable waters, "a traditional role of watercraft." The Court then found the instrumentalities of firearms and the injuries they cause are "not so inherently indigenous to land as to preclude any maritime connection." Lastly, the Court concluded rifle fire directed at a vessel, albeit a small one, on a commercial artery presents "sufficient danger to maritime commerce" for the federal courts of admiralty to "assume jurisdiction and to furnish remedies for those injured while traveling navigable waters." In finding a sufficient connection to traditional maritime activity, the Court noted admiralty jurisdiction of federal courts "stems from the important national interest in uniformity of law and remedies for those facing hazards of waterborne transportation." 485 F.2d at 525-526; accord *Foremost* 457 U.S. at 674-677 (the Court observed the primary focus of admiralty jurisdiction is "unquestionably the protection of maritime commerce," and recognized the interest can be fully vindicated "only if all operators of vessels on navigable waters are subject to uniform rules of conduct").

Pursuant to the guidance of the Fifth Circuit in *Kelly, supra,* and the United States Supreme Court in *Grubert, supra*, and based on the evidence and pleadings submitted by the parties in this matter, this Court notes there is no dispute that plaintiff Jody Meche was the vessel's pilot, who was responsible for the safe navigation of the waters at the time plaintiffs were allegedly fired upon by defendant. Likewise, there is no dispute the vehicle Mr. Meche was operating with the other plaintiffs was a "boat," whose function is transportation across navigable waters, which is a traditional role of water craft. Likewise, there is no dispute that instrumentalities of firearms and the injuries they cause are not so inherently indigenous to land as to preclude any maritime connection. Lastly, this Court concludes rifle fire directed at a vessel, albeit a small one, on a unique, but

4

nonetheless commercial or potentially commercial artery, presents sufficient danger to maritime commerce for this Court to invoke admiralty jurisdiction.[4]

With respect to the two-part test set forth in *Grubart*, it is noted that the *Grubart* Court relied on its prior decision in *Sisson* to resolve the first inquiry of whether an incident involved the potential to disrupt maritime commerce.  In *Sisson*, an incident was described at an intermediate level of generality as "a fire on a vessel docked at a marina on navigable waters," which "plainly satisfied the first part of the test."  To arrive at such a description, the *Sisson* Court rejected a general description of "fire" as "too general to differentiate cases;" however, the Court also rejected the other "extreme" description of "damaging nothing but pleasure boats and their tie-up facilities," which would have ignored the capacity to endanger commercial navigation.  Consequently, the *Grubart* Court described its incident as "damage by a vessel in navigable water to an underwater structure," which left little question that it was the kind of incident having a disruptive impact on maritime commerce, noting that the incident "actually turned out" to lead to restrictions on the navigational use of the waterway.  513 U.S. at 538-539 (citing *Sisson, supra* at 363).

Following *Grubart, supra,* and *Sisson, supra,* this Court first considers whether the incident could potentially disrupt maritime commerce.  This Court finds that simply describing the "general features" of the incident as "intentional rifle fire" is too general to differentiate cases.  Likewise, this Court finds that a description such as "intentional rifle fire at nothing but pleasure boats and individuals hunting for frogs" ignores the capacity to endanger commercial navigation. Specifically, the uncontroverted and unequivocal testimony adduced in this matter establishes commercial

---

[4]  The Court having under separate heading found the Lake Rycade area to be navigable and susceptible to maritime commerce, and thus, adopting that determination and all findings of fact and conclusions of law inherent therein into this Ruling.

5

operators of vessels will not travel on navigable waters in areas such as Lake Rycade where commercial products, including alligators, fish, frogs, crawfish and turtles, have been found because those operators fear being attacked by armed individuals. Consequently, this Court finds that a carefully tailored description directed solely at "recreational vessels whose occupants are hunting for frogs" ignores the capacity for commercial fishing and travel of the Lake Rycade area and thus ignores the capacity to endanger commercial navigation.

Accordingly, this Court relies on a description of the incident at an intermediate level of generality, namely, "intentional rifle fire at a vessel on navigable waters," which supports this Court's conclusion that the incident satisfies the first part of the *Grubart* test. Notably, like the facts in *Grubart*, the activity in this matter, namely the alleged intentional rifle fire at vessels in navigable waters, "actually turned out" to lead to restrictions on the navigational use of the waters, as testified to by the commercial hunters and fishermen at the evidentiary hearing.

With respect to the second *Grubart* inquiry in this matter, namely whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity, this Court asks whether the tortfeasor's activity, commercial or noncommerial on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand. This Court concludes defendant's conduct involves the intentional obstruction of vessels' navigation in navigable waters. Such navigation "clearly falls within the substantial relationship." *Grubart*, 513 U.S. at 539-540 (citing *Foremost*, 457 U.S. at 675). Accordingly, this Court finds the defendant's alleged activity is so closely related to activity subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.

6

In view of the foregoing, this Court finds the activity giving rise to plaintiffs' allegations in this matter has a sufficient connection to traditional maritime activity to support the invocation of admiralty jurisdiction pursuant to the former test under *Kelly* as well as the modern test under *Grubart*.

## CONCLUSION

Based on the applicable law and the factual determinations rendered by the Court on the record at the conclusion of the evidentiary hearing, as supplemented with written reasons and adopted herein as part of this Court's reasons and findings of fact, this Court finds defendant is not entitled to the relief he seeks in his Motion to Dismiss, which is hereby DENIED in its entirety.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _24_ day of February, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE